Brigham Fordham on behalf of the plaintiff, I mean, the appellant, Arcinega-Contreras and Chuck Evendorf, who's also from my firm. I'd like to reserve two minutes for rebuttal, if I may. All right. We'll try to help you keep track of your time. Thank you. May it please the Court, immigration law has long vested the Attorney General with discretion in deciding which undocumented immigrants to attempt to remove. This discretion is important because it allows the government to focus its resources where they are most needed, and it saves undocumented immigrants from being removed without consideration of their circumstances. Before the Court's day are two wholly independent challenges to the final removal order issued against Mr. Arcinega-Contreras. Mr. — both of these challenges have to do with the discretion of the Attorney General, which was — which Mr. Contreras was denied in these cases. He was denied it at two points. First, he was automatically placed into removal proceedings simply because his application for asylum was denied. Second, he was denied the opportunity to apply for suspension of deportation simply because of the date that proceedings commenced against him. With regard to jurisdiction, the government has suggested that this Court does not have jurisdiction due to Section 242G, which holds that the — this over discretionary decisions of the Attorney General. That is not the case here. Both of the challenges that Mr. Contreras brings today are classic examples of a challenge to a statute and a regulation. There's no discretionary decision here that is being challenged. As I — as I said, Mr. Contreras' challenge is, first, a regulation, 8 CFR 208.14, which automatically places rejected asylum applicants into removal proceedings. There was no discretionary decision there by the Attorney General to decide whether to place them in removal proceedings because the Attorney General had no discretion. Second, Mr. Contreras' challenging provision of the IRAT, which is — which states that an immigrant cannot apply for suspension of deportation if they are placed in proceedings after April 1st, 1997. That's also a challenge to the statute itself. It's not a challenge to any decision by the Attorney General when to place them in proceedings. And both the challenges, I gather, are constitutional challenges based on equal protection. That is correct. That's the argument. And you're — when you've got the uphill battle, you've got to convince us that on one ground or the other that there was no rational basis for this. That is correct. As to the first one, I gather the argument is that if someone comes in and voluntarily seeks asylum, that person is treated worse than someone who is involuntarily placed in removal proceedings and then seeks asylum. That's the argument? Not exactly. Okay. Help me out, then. The argument instead is that if somebody doesn't apply for asylum at all and is in this case, the Attorney General decides in his discretion, out of the — some millions of undocumented immigrants, to place that particular person in removal proceedings. However, if that same person applies for asylum, which is something the government encourages immigrants to do, and it's rejected, that person will automatically be placed into removal proceedings. And the problem there is that being placed in removal proceedings is itself placing that person at peril. The Supreme Court has compared removal proceedings to criminal proceedings because they place the subject at such peril. I don't understand what the Attorney General should do with a person who's before him, who's obviously has — if he's not — if he's not — if asylum has been denied, it's probably already been established that he is not in the country with proper papers. So what would you have the Attorney General do? The government is aware of many undocumented immigrants who are here without papers and improperly, both through the IRS, through services, and through asylum applications. But the government has the choice in those other circumstances of deciding whether or not to place that person in removal proceedings. Simply because the government knows about the person doesn't mean the government has to place them in removal proceedings. In most cases, the Attorney General has discretion to decide, based on the circumstances, whether this person is a threat, whether this person has unusual circumstances that don't warrant placing that person in removal proceedings. The exception, one of the few exceptions, is asylum applicants, and that is that asylum applicants must be placed in removal proceedings. In fact, the only reason that Mr. Contreras is before this Court today is because he applied for asylum, and indeed, in his case, he did so inadvertently. There's — the problem with this regulation is that it's bad for the government as well as bad for immigrants. It's bad for the government because it doesn't allow the government to decide which immigrants to place in removal proceedings. Instead, it's forced to place all immigrants who are denied asylum into removal proceedings. It's also bad for immigrants because it places immigrants at peril simply because they're doing something the government has indeed encouraged immigrants to do, and that is to apply for asylum. It is irrational to — for the government to decide that while asylum is the grant of a — I'll call it a privilege, but it's the grant of something by the government to a certain category of would-be immigrants, they want to discourage frivolous applications for asylum, and one of the prices for applying for asylum is if you don't get it, you're going to be in removal proceedings. If the incentive is to discourage frivolous application for asylum, there are already regulations in place that if you file a frivolous application for asylum, as I understand it, that can be grounds in and of itself for removal without proceedings. And so there already is a way of discouraging those applications. But having discouraged it in one way, they can't discourage it in an additional way? I — it seems to me that it doesn't make sense if you're looking at what — at the asylum regulations which are built up to encourage applicants to apply for asylum, trying to help these people who are very often in dangerous circumstances get asylum. And the — and besides that point is the fact that many people apply for asylum inadvertently or they fail to get asylum, not because it's frivolous, but simply because they don't meet the narrow restrictions on asylum. Asylum is extremely difficult to get, as this Court is aware. I'll just quickly move to the IRA argument, because I see that my time's almost up. The best way to look at the IRA argument is to compare it to Hernandez-Menskida, I think. In that case, the Court held that there was a rational basis for asylum filing deadline in NACRA, but it held that because the date asylum applications had to be filed was related to the date of the person's arrival and that person's need for asylum. It served an evidentiary basis. I would submit that the date that somebody is placing the removal proceedings does not serve that same purpose. It doesn't serve, indeed, any purpose. These — as I mentioned, this Court can overturn Mr. Contreras' removal order based on either of these grounds, and I will reserve the rest of my time. Roberts. Okay. Why don't we hear from the government and then we'll give you a chance to respond. Good morning, Your Honors. I'm John McAdams. I represent the Attorney General. And may it please the Court, this case involves the Attorney General's discretionary determination to commence a removal proceeding in July 2001 pursuant to the Immigration and Nationality Act, Section 242G, and this Court's precedent in Jiménez-Ángelez and the Supreme Court, Reno v. American Arab, the Court lacks jurisdiction over that decision. Mr. Artzunaga-Contreras did not apply for either asylum or cancellation of removal until July 2001, four years after the enactment of the IRERA, the Act that established the cancellation of removal as opposed to suspension of deportation. So because he could not apply, he was not eligible for suspension of deportation, he's not met his burden to establish that there is an equal protection issue. And so the Court should look at the case and find that it lacks jurisdiction using 242G. I'm not sure that's directly responsive to the argument, yet, as I understand the argument it is, once someone applies for asylum, the government is required by statute and regulation simply to place the person in removal proceedings, and if the asylum application fails and if there are no other grounds to stay in the country, then the person is not eligible to stay in the country. Is that correct? That's an accurate description of the system? Yes, sir. And then the argument is that that's inconsistent with what the government does with lots of people that it knows about who have no right to be in this country and who, if put in removal proceedings, would be removed without much legal question whatsoever, and the distinction in treatment between those two classes of illegal immigrants is irrational. That's the argument. Right. Well, under the regulation, Your Honor, the 208.14, there are a number of situations where the immigration judge or the asylum officer reviews an asylum application and then has to exercise discretion and make a determination on what to do, whether, for instance, an asylum applicant has a valid visa remaining. The asylum applicant can stay until the visa expires. Well, but if he's got a valid visa, he can't be removed. That doesn't sound like discretion to me at all. Well, except that, well, that's true. But the immigration judge, when looking at a situation like this, an alien who has no basis for staying, then the determination that the immigration judge has to make is, is there other relief available for which the alien could be eligible and seeing none than the decision to put him into removal proceedings? That does not strike me as responsive to the argument that was made. What rational basis is there for distinguishing between the treatment given to people who apply for asylum on the one hand and people who have not applied, who are out there in the world, as it were, at large, but who are easily deportable or now removable if, in fact, they were put in proceedings? What's the rational basis for not treating those two categories the same? Well, in the latter, the ones who are out at large, they haven't come to before the Attorney General, doesn't know about them. Well, the premise is that the Attorney General does know about them. But is your argument that knowledge comes in different forms? Exactly, Your Honor. I don't want to make your argument for you. The presence of an alien in the country may or may not be known to the Attorney General based on how that alien comes into the country, and that would preclude the Attorney General from taking any action on that alien's case. An individual who is a visa overstay, through the administration of giving the visa and checking the expiration of the visa, the alien can be put into proceedings. An alien who enters, as Mr. Contreras did here, without inspection, crossing the border, there is no way that the Attorney General can capture that individual to start the process until either he commits a violation. Well, let me give you another example. This happens on the border here all the time. People come in. They're not visa overstays. They simply came across the border illegally and undetected, but they're caught. In large numbers, they are simply taken back across the border. There's no formal deportation proceeding. There's no bar because of the removal and so on. They're just taken back across the border. They're an administrative removal. They're issued an administrative removal order. Right. And removed. And so that sounds like, and the consequences such as could take across the border are less severe than the sort of removal that you get at the end of an unsuccessful asylum case if a voluntary departure is not granted. Correct? Is that right? That's true. And an alien who is apprehended coming into the U.S., there is at least a small interview to determine whether or not there is a credible fear for them to seek asylum or not. And in the area of immigration where the government has significant power, the basis for the Attorney General carrying out the immigration statutes here is one that the rational basis is that as the Attorney General finds, becomes aware of an individual who is illegal, then there is a determination made to commence the proceeding against that alien. And that's what happened here until Mr. Contreras submitted his asylum application which had a warning on it that he could be put into removal proceedings. And in the record on page 59 where his application is, there is a warning up top that explains what may happen. Mr. Contreras wasn't known to the Attorney General like many other undocumented aliens. And so at that point, he commenced the proceedings. The rational basis that exists in the categories of aliens is that once the alien becomes known to the Attorney General, then that opportunity for the Attorney General to exercise the discretion occurs. And that's what happened here. And so there isn't a denial of equal protection. Mr. Contreras was given his process in terms of filing the application. He appeared before the immigration judge and was given the due process that he was entitled to. And you told me there's no violation of equal protection. And then you told me how his due process wasn't violated. I thought we were talking about equal protection. We are, Your Honor. I'll get on into the process. But the alien who is given the opportunity to apply for the immigration process, the alien who is given the opportunity to apply for asylum, as Mr. Contreras was, and then the alien who is at large, they don't stand different but for the fact that they're not one category is not known to the Attorney General. But the Attorney General just can't turn away from Mr. Contreras and allow him to remain illegally in the United States. But there is a rational basis on the Attorney General's enforcement of the immigration statute, and that's what happened in this case. If I find any other questions, that concludes my argument, Your Honor. Thank you. You've saved a little time. Thank you. Just briefly, getting rid of Section 28.14 is not going to prevent the Attorney General from putting aliens he's aware of into removal proceedings. He's still going to be able to do that. The only difference is that he will be able to exercise his discretion to do that. With regard to the asylum applicants, I think it's important for this Court to notice that asylum is extremely difficult to get, and there's lots of asylum applicants who don't get it not because they filed a frivolous claim but because they just don't meet all those strict guidelines. And if anywhere in those circumstances, the Attorney General should be able to exercise his discretion in order to allow these people who should stay. With that, I'll submit it, Your Honor. Okay. Thank you very much. Thank you, both sides, for a very helpful argument. The case of Arsenio Contreras v. Gonzalez is now submitted for decision.
judges: Trott, W. Fletcher, Restani